THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| HEATHER SANTANA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-4059-CV-C-NKL |
| ) | |
| PROENERGY SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is a Motion to Compel Arbitration Pursuant to Employment Agreement [Doc. # 10] filed by Defendant ProEnergy Services, LLC ("ProEnergy"), and Plaintiff's Motion to Strike Exhibit A to Defendant's Motion to Compel Arbitration, with Supporting Suggestions [Doc. # 17] filed by Heather Santana ("Santana"). For the reasons stated below, the Court denies Santana's motion to strike, and grants ProEnergy's motion to compel arbitration.

**I.   Background**

On February 17, 2011, Santana filed a Complaint [Doc. # 1] against ProEnergy, alleging claims of sexual harassment (Count I) and retaliation (Count II) in violation of Title VII. ProEnergy filed its motion to compel arbitration on May 5, 2011, and attached to its motion a copy of an employment agreement ("Agreement") signed by Santana on July 7, 2007, and ProEnergy's human resources manager, Theresa Patton, on July 23, 2007.

The Agreement declares:

> THIS Employment Agreement ("Agreement") is made and entered into this 23 day of July 2007 by and between ProEnergy Services, LLC, a Missouri limited liability company, having an office at 2031 Adams Rd, Sedalia, Missouri 65301 ("ProEnergy"), and Melvin Nay an individual residing at 1434 S. Sneed, Sedalia, MO 65301 ("Employee").

[Doc. # 25-1, at 3 (Page 1 of Agreement)]. Theresa Patton, who prepared the Agreement, failed to replace "Melvin Nay" with Santana's name. [Doc. # 25-1, ¶ 5]. Santana resides at 1434 S. Sneed. [Doc. # 25-2, at 14]. The signature line for the "employee" on the Agreement states "By: Heather Santana," above which, is Santana's signature. [Doc. # 25-1, at 10 (Page 8 of Agreement)].

The Agreement indicates that "ProEnergy agrees to employ Employee, and Employee accepts said employment with ProEnergy, upon the terms and conditions set forth in this Agreement. The scope of services to be performed by Employee . . . shall be as further described in the signed Assignment Offer Letter [("Offer Letter")] attached hereto and incorporated by reference herein." [Doc. # 25-1, at 3 (¶ 1 of Agreement)]. The Offer Letter was dated July 3, 2007, addressed to Santana, and signed by Santana and ProEnergy's Vice President of sales, John Stevens. [Doc. # 25-1, at 12-13].

The Agreement includes an agreement to arbitrate ("Arbitration Provision"):

> If a dispute, controversy or claim arises between the parties, including without limitation any dispute, controversy or claim that arises out of or relates to this Agreement or any other agreement or instrument between the parties, or the breach, termination or invalidity of the Agreement or any such other agreement or instrument, and including but not limited to a claim based on or arising out of a claim for tortuous interference or other tortuous or statutory claims arising before, during or after termination, and if said dispute cannot be

> settled through direct discussions, the parties agree to first endeavor to settle the dispute in an amicable manner by mediation administered by the American Arbitration Association under its Employment Dispute Resolution Rules (the "Rules") as such pertain to mediation, before resorting to arbitration; . . . . Thereafter, any unresolved dispute, controversy or claim arising between the parties, including without limitation any dispute, controversy or claim that arises out of or relates to this Agreement or any other agreement or instrument between the parties, or breach thereof, and including but not limited to a claim for tortuous interference or other tortuous or statutory claims arising before, during or after termination, shall be settled by arbitration . . . .

[Doc. # 25-1, at 9 (¶ 20 of Agreement)].

Additionally, the Agreement states that three days' written notice of termination shall be given for any termination without cause. [Doc. # 25-1, at 8 (¶ 12 of Agreement)]. In 2009, ProEnergy terminated Santana's employment without cause, but did not provide three days' prior written notice.

In its Motion, ProEnergy asserts that the Agreement is a valid agreement to arbitrate, as it includes a valid Arbitration Provision, and that Santana's Title VII claims fall under the coverage of the Arbitration Provision.

## II. Discussion

A party may request arbitration of claims when parties have agreed in writing to an arbitration and one party has instead filed its claim in a court. 9 U.S.C. § 4. If the Court determines that the claims are referable to arbitration, then the Court must stay the arbitral claims pending the arbitration. 9 U.S.C. § 3.

The federal courts recognize a strong national policy in favor of arbitration. The presumption is that an arbitration agreement will be enforced. *See Lyster v. Ryan's Family*

3

*Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001); *see also Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir. 1999) (courts recognize a "broad principle of enforceability" with respect to arbitration agreements) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984)).

Under Eighth Circuit law, "[b]efore a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994) (citation omitted). Moreover, "any doubts in construing contract language on arbitrability 'should be resolved in favor of arbitration.'" *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 430 (8th Cir. 1998) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983)).

### A. Santana's Motion to Strike the Agreement

As a preliminary matter, Santana argues that the Agreement, which was attached to ProEnergy's Motion to Compel, should be stricken because it is "unauthenticated and without evidentiary foundation." [Doc. # 17, at 1]. However, ProEnergy has submitted to the Court two affidavits that attest to the authenticity of the Agreement: statements of (1) Theresa Patton [Doc. # 26-2, at 1-2], a signatory of the document, and (2) Connie Childs [Doc. # 26-1, at 1-2], who maintained the document in Santana's employment file. The Court also finds that ProEnergy has sufficiently identified the relevance of the Agreement

4

because ProEnergy bases its motion on the Arbitration Provision in the Agreement. For these reasons, the Court denies Santana's Motion to Strike.

### B. Validity of Arbitration Agreement

State contract law governs the validity of an arbitration agreement. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citing *Lyster*, 239 F.3d at 946 (8th Cir. 2001); 9 U.S.C. § 2). Under Missouri law, "[t]he primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991).

#### i. Parties to the Agreement

First, at issue in this case is whether the Agreement was made between Santana and ProEnergy when the Agreement named a "Melvin Nay" in its text. On the Agreement's face, there appears to be uncertainty as to the identity of the "employee" who is party to the Agreement. On the one hand, the name "Melvin Nay" is set forth as the "employee" on page one of the Agreement. On the other hand, the address where the "employee" is said to reside at is that of Santana's residence; Santana's name appears on the signature line on the last page of the Agreement; and the Agreement was signed by Santana.

Despite this inconsistency on the Agreement's face, however, the Court does not find that an ambiguity exists. "A contract is ambiguous only when it is reasonably susceptible of different constructions. In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered. Writings made a part of the contract by annexation or reference are to be considered in determining whether or not it is

ambiguous." *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973). Here, the Offer Letter, which was incorporated into the Agreement by reference, was specifically addressed to Santana, and makes no reference to "Melvin Nay." Additionally, the Offer Letter to Santana states that the Agreement "sets forth the additional terms and condition of *your* employment with ProEnergy." [Doc. # 25-1, at 12 (emphasis added)]. This, coupled with the fact that Santana signed the Offer Letter, Santana's residential address is listed in the Agreement, the signature line for the "employee" lists Santana's name, and Santana signed the Agreement, leaves no room for the Agreement to be "reasonably susceptible" to a conclusion other than that the Agreement was between Santana and ProEnergy and that the Agreement's terms are applicable to them and not to third parties.

### ii. Failure to Provide Arbitration Procedures

Santana argues that the Arbitration Provision in the Agreement is invalid because the Agreement indicates that the rules of the American Arbitration Association are to govern mediation and arbitration procedures identified in paragraph 20 of the Agreement, yet the Agreement does not explicitly incorporate those rules into the contract. Santana adds that a copy of such rules were not provided to Santana so that she could have a clear understanding of all terms of the Agreement.

The Court finds that Santana's arguments lack merit for the following reasons.

First, Santana fails to explain to the Court how the rules of the American Arbitration Association are not "incorporated" by reference. The Agreement clearly states that "mediation [would be] administered by the American Arbitration Association under its

Employment Dispute Resolution Rules ("the Rules")," and that remaining claims "shall be settled by arbitration administered by the American Arbitration Association in accordance with its Rules . . . . Any mediation or arbitration hereunder shall be pursuant to the applicable Rules except to the extent modified in this Section 20." [Doc. # 25-1, at 9 (¶ 20 of Agreement)]. Santana presents no case law, nor is the Court aware of any, that requires a contract to use the word "incorporate" before referenced matters are in fact incorporated into the contract. Indeed, the rules of the American Arbitration Association are clearly incorporated into the Agreement by reference, consistent with paragraph 19 of the Agreement, which states: "This Agreement, including all matters expressly incorporated herein *by reference*, sets forth the entire agreement and understanding between the parties . . . ." [Doc. # 25-1, at 9 (¶ 19 of Agreement (emphasis added))]. Second, because the Agreement makes clear reference to the rules of the American Arbitration Association, there is no doubt as to the identity of these rules. *Livers Bronze, Inc. v. Turner Const. Co.*, 264 S.W.3d 638, 643 (Mo. Ct. App. 2008) ("Parties to a contract may incorporate contractual terms by reference to a separate noncontemporaneous document . . . only if the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.").

Moreover, Santana's reliance on *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smtih, Inc.*, 170 F.3d 1 (1st Cir. 1999), for the proposition that ProEnergy was required to provide her a copy of the American Arbitration Association's rules in order for the Agreement to be valid, is misplaced. In *Rosenberg*, the arbitration agreement between Merrill Lynch and

7

Rosenberg defined the range of claims subject to arbitration as those that are required to be arbitrated under the rules of the New York Stock Exchange ("NYSE"). In placing the burden on Merill Lynch to have provided Rosenberg with a copy of the NYSE rules, the court emphasized that Merrill Lynch "expressly represented" that Rosenberg would be advised of those rules. *Id.* at 19. Indeed, the terms of the employment agreement required that Merrill Lynch provide either a copy of the NYSE rules or information to the same effect to Rosenberg. *Id.* at 20. Here, ProEnergy made no such representation that it would provide Santana with a copy of the rules of the American Arbitration Association or the content thereof. Moreover, there is no evidence that Santana asked ProEnergy for the rules and was denied access to them, or that Santana could not have obtained access to the rules on her own.

> iii. **Requirement that Arbitration Costs be Split and that Each Party Bear Own Attorney's Fees**

Santana alternatively argues that even if the Agreement were validly entered into by both parties, the Arbitration Provision cannot be enforced because it includes clauses that require that arbitration costs be split and that each party bear its own attorney's fees. The Agreement presented to the Court by ProEnergy states: "[A]ny unresolved dispute, controversy, or claim arising between the parties . . . shall be settled by arbitration . . . . All fees and expenses of the arbitration (exclusive of filing fees for claims and counterclaims) shall be borne by the parties equally." [Doc. # 25-1, at 9 (¶ 20 of Agreement) ("fee-splitting clause")]. "Each party shall bear the expense of its own counsel, experts, witnesses, and

8

presentation of proofs." [Doc. # 25-1, at 9 (¶ 20 of Agreement) ("attorney's fees clause")]. For the following reasons, the Court finds that both the fee-splitting clause and the attorney's fees clause do not render the Arbitration Provision unenforceable.

First, "[t]he party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004); *see also Cicle v. Chase Bank USA*, 583 F.3d 549, 556 (8th Cir. 2009) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). Here, Santana has provided to the Court no evidence of her current income, and no evidence to support her contention that arbitration costs will "reach into five figures." [Doc. # 18, at 12]. Even if the Court relied on the Tenth Circuit Court of Appeals' 1999 estimate that arbitration of employment discrimination cases cost between $1,875-$5000, *see Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999), without any evidence of Santana's income, the Court cannot conclude that the fee-splitting provision is unconscionable as applied to her. Santana has not met her burden to show that she does not have access to the arbitral forum.

Second, the Court notes that although Title VII claims can be subject to arbitration, the Federal Arbitration Act's presumption in favor of enforcing agreements to arbitrate is not without limits. *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). "[A]n individual [who enters into an arbitration agreement] does not forgo

9

substantive rights provided by [] statute, but merely submits their resolution to an alternate forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). It is within the court's power to consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of [statutory] claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

A reasonable attorney's fee is ordinarily awarded to a prevailing plaintiff in a Title VII action. 42 U.S.C. 2000e-5(k). Here, the attorney's fees clause "purports to forfeit [plaintiff's] statutory right to attorney's fees, a remedy that we have already recognized is essential to fulfill the remedial and deterrent functions of Title VII." *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 685 (7th Cir. 2002). However, the Eighth Circuit has held that, even as applied to a claim under the ADEA, which permits recovery of attorney's fees, an attorney's fee clause in an arbitration agreement is not so "substantively unfair and inimical to the public good." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1055 (8th Cir. 2004) (internal quotation omitted). The court concluded, "We therefore follow the federal presumption in favor of arbitration and conclude that the arbitrator should determine this remedial issue and decide whether Faber has in fact waived his statutory right to recover attorneys' fees or whether an appropriate remedy may still include them." *Id.* The Court finds no reason why the same conclusion ought not apply to this case.

Thus, for the foregoing reasons, the Court finds that neither the fee-splitting or attorney's fees clauses render the Arbitration Provision of the Employment Agreement

unenforceable. It shall be for the arbitrator to decide an appropriate remedy for Santana, which may or may not include attorney's fees, should she prevail.

### iv. Alleged Breach of the Agreement by ProEnergy

Santana alternatively argues that even if the Agreement were validly entered into by both parties, ProEnergy breached the Agreement when it failed to give her three days' written notice of her termination without cause, and therefore Santana has the right to repudiate the Agreement. One of the circumstances courts examine to determine the materiality of an alleged breach is "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." *R.J.S. Security, Inc. v. Command Security Svs., Inc.*, 101 S.W.3d 1 (Mo. Ct. App. 2003) (citing Restatement (Second) of Contracts § 241 (1979)). Here, Santana's employment was at-will and was subject to termination at any time with or without cause. [Doc. # 25-1, at 3 (¶ 1 of Agreement)]. Thus, the only benefit that Santana was deprived of due to the lack of notice is the compensation she would have earned and the benefits she would have accrued for the three additional days she would have been employed had she been properly notified. Santana can be adequately compensated by ProEnergy for this loss. Thus, the Court does not find that ProEnergy's failure to provide Santana with three days' notice of her termination of employment is a material breach that would excuse Santana from further compliance with the Agreement.

### B. Scope of Arbitration Provision

Having determined that there was an agreement to arbitrate, Santana's claims are arbitrable unless they are outside the scope of that agreement. *See Houlihan*, 31 F.3d at 694-

95. Santana argues that the Arbitration Provision does not explicitly apply to disputes arising out of or related to the terms or conditions of employment, and therefore her Title VII employment discrimination claims do not fall within its scope. However, Santana's argument mistakenly relies solely on the language following "including," which lists examples of types of disputes that would be subject to arbitration. Santana fails to pay heed to the parent clause in the provision: "If *a dispute, controversy or claim* arises between the parties . . . the parties agree to first endeavor to settle the dispute . . . by mediation. . . . Thereafter, *any unresolved dispute, controversy or claim arising between the parties* . . . shall be settled by Arbitration." [Doc. # 25-1, at 9 (¶ 20 of Agreement (emphasis added))]. Because the Arbitration Provision applies to any "dispute, controversy or claim," the Court finds that the Arbitration Provision of the Employment Agreement applies to resolution of Santana's Title VII claims.

## III. Conclusion

Accordingly, it is hereby ORDERED that Santana's motion to strike [Doc. # 17] is DENIED, and ProEnergy's motion to compel arbitration [Doc. # 10] is GRANTED. The Court stays these proceedings pending the arbitration.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 22, 2011  
Jefferson City, Missouri